**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**LATONYA JONES,**

**Plaintiff,**

**vs.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**
**_________________________/**

**CIVIL ACTION NO. 11-14430**

**DISTRICT JUDGE NANCY G. EDMUNDS**

**MAGISTRATE JUDGE MONA K. MAJZOUB**

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be denied, Defendant's Motion for Summary Judgment (docket no. 13) be granted, and Plaintiff's complaint be dismissed.

## II. PROCEDURAL BACKGROUND

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income in April 2009 alleging disability beginning March 25, 2006. (TR 117-23). The claims were denied and Plaintiff filed a timely request for a *de novo* hearing. On July 7, 2010 Plaintiff appeared with counsel in Detroit, Michigan and testified before Administrative Law Judge (ALJ) Ethel Revels. (TR 26-62). Vocational Expert (VE) Harry Cynowa also appeared and testified at the hearing. In a November 18, 2010 decision the ALJ determined that Plaintiff was not disabled because she retained the ability to perform a range of light work. (TR 13-22). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-3). The parties filed cross Motions for Summary Judgment and the issue for

review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was thirty-one years old on her alleged disability onset date. She completed the twelfth grade and received a high school diploma. (TR 142). There is evidence to suggest that Plaintiff pursued two years of post-graduate training in computers and as a medical administrative assistant. (TR 521). Plaintiff's past employment includes work as a sales clerk at a watch company and as a retail sales attendant at Sam's Club. (TR 33, 50-52). Plaintiff testified that she suffered a torn rotator cuff of the right shoulder in a motor vehicle accident in 2007. She also states that she suffers from arthritis and inflammation. Plaintiff complains of right arm weakness and trembling and states that the bone in her right arm is deteriorating. She states that she can't lift anything over one pound with her right arm and she can't reach, push or pull. (TR 42). She testified that her physical injuries prevent her from doing housework, cooking, and seeing to her personal hygiene. (TR 40, 42, 45). Plaintiff claims that she has arthritis, hip and lower back pain, and spurs in both feet that cause a great deal of pain and prevent her from standing for long periods of time. (TR 34). She testified that she has been in three automobile accidents and is afraid to get into a car. She does not have a driver's license. Plaintiff testified that she is taking Xanax, Vicodin, Tylenol with codeine, and Darvocet which cause nausea and drowsiness. (TR 35-36).

Plaintiff testified that she had surgery to repair her torn rotator cuff after which she received physical therapy. She estimated that she can walk approximately one-half block before she experiences pain in her feet and hips. She reports that she can sit approximately ten minutes before

feeling pain in her hips and back, and she can stand for only one to two minutes before experiencing pain in her shoulder and feet. (TR 37-38). Plaintiff testified that she walks with the use of a cane. (TR 54). She reports that she has been treated for anxiety, mostly related to getting into a car. (TR 48).

**B. Medical Evidence**

Plaintiff began treating with Dr. James Beale, Jr. on July 29, 2006 for injuries she sustained in a March 24, 2006 motor vehicle accident. (TR451-81). She continued treating with Dr. Beale through January 7, 2009. An MRI of the right shoulder dated July 29, 2006 revealed a high-grade partial thickness primarily interstitial tear of the supraspinatus insertion. (TR 474, 480). On physical examination, Dr. Beale observed that Plaintiff walked with a limp and complained of severe, throbbing pain in the right shoulder. He noted that Plaintiff exhibited a decreased range of motion of the cervical spine and right shoulder, along with tenderness along the deltoid mass and diminished sensation in the right upper extremity. (TR 474).

On August 24, 2006 Dr. Beale performed a surgical repair of Plaintiff's torn rotator cuff. (TR 474). Following surgery Plaintiff began physical therapy and Dr. Beale ordered round the clock attendant care through November 8, 2006. (TR 467, 470-71). On November 1, 2006 Dr. Beale documented that Plaintiff's physical therapy was helping and Plaintiff was doing much better. (TR 466). The following day Dr. Beale signed a letter addressed to Plaintiff's attorney in which he said that Plaintiff had not showed significant signs of clinical improvement despite having participated in physical therapy. (TR 465). Dr. Beale noted that Plaintiff had full range of motion of the right shoulder but decreased strength in the right upper extremity. He further noted that Plaintiff was

limited to reaching, lifting, pulling, pushing, and required attendant care to assist her with her daily living. (TR 465).

Plaintiff reported to Dr. Beale for a follow-up examination on August 27, 2008 with complaints of right knee and low back pain that became aggravated at night and with activities of daily living. (TR 454). Dr. Beale noted that Plaintiff had a decreased range of motion of the right arm and knee with tenderness and swelling. An MRI of the right shoulder dated January 27, 2009 revealed an intermediate signal within the supraspinatus tendon compatible with tendonosis of the right shoulder. The MRI also revealed minimal joint fluid with fluid surrounding the long head of the biceps tendon compatible with tenosynovitis. (TR 482). An MRI of the right knee on the same day revealed an underlying joint effusion and intact menisci, cruciate, and collateral ligaments. (TR 482).

Plaintiff received pain management treatment from Dr. Dawit Teklehaimanot from April 4, 2006 through March 16, 2007. (TR 304-70). By March 16, 2007 Plaintiff reported to Dr. Teklehaimanot that she was doing much better and had experienced improvement in the pain in her neck, shoulders, and knees. (TR 315). Physical examination showed that Plaintiff was alert and oriented to person, place, and thing, neurologically intact, and she walked independently without an assistive device. The doctor noted that Plaintiff's knee and sensory examinations were normal. The doctor concluded that Plaintiff's injury had resolved or stabilized and he discharged her with a recommendation to continue a home exercise program. (TR 315).

Physical therapy treatment notes from the Progressive Therapy & Rehab Center dated January 4, 2007 reveal that Plaintiff showed significant signs of improvement in her pain level and range of motion, with an improved range of motion to within normal limits and a pain level of four

on a ten-point scale. (TR 280). An MRI of the right knee dated December 12, 2007 was unremarkable, as was a January 2009 x-ray of the right knee. (TR 391, 416). January 2006 x-rays of Plaintiff's right foot revealed a small inferior calcaneal spur but otherwise no significant abnormalities. (TR 396).

Emergency treatment notes from Sinai-Grace Hospital reveal that Plaintiff exhibited a spontaneous range of motion of all extremities in January 2009. Treatment notes further reveal that Plaintiff was alert, appropriate, and able to follow commands. (TR 397-98). During an emergency room visit in November 2008, Plaintiff denied taking any medications and she was observed to be alert, oriented to person, place, and thing, with appropriate mood and affect. (TR 401). In March 2008, Plaintiff presented to the emergency room with a sore throat and cough and while there denied taking medications and reported that she did not have any back pain, flank pain, or abdominal pain. (TR 408).

A treatment note from the Orthopaedic Hand and Podiatry Clinic of Sinai-Grace Hospital dated February 23, 2009 states that Plaintiff presented with complaints of right knee and right shoulder pain times three years. (TR 412). The report states that Plaintiff had decreased range of motion and strength in the right upper extremity. Passively, Plaintiff had full range of motion of the shoulder with no impingement, she was neurovascularly intact to the upper extremity, and she had no numbness to light and deep palpation over the deltoid, biceps, triceps, and entire forearm and hand region. (TR 413). The practitioner observed that Plaintiff had full range of motion of the elbow and fingers and a full grip strength. The treatment notes states that Plaintiff exhibited a Parkinson-like tremble of her fingers and right hand that stopped when she was asked to perform range of motion. In addition, Plaintiff had full range of motion of the right knee without crepitation.

(TR 414). She was neurovascularly intact to the lower extremity with full quadriceps and hamstring strength. Plaintiff was diagnosed with right rotator cuff tendonosis and tremor of the right upper extremity. She was referred back to her primary care physician for follow-up.

On June 30, 2009 Dr. John Morovitz performed a Physical RFC Assessment on behalf of the state disability determination service and determined that Plaintiff was limited to lifting no more than twenty pounds occasionally and ten pounds frequently, limited to standing, walking, and sitting six hours in an eight-hour work day, with limited upper extremity push/pull activities. (TR 484). Dr. Morovitz found that Plaintiff had occasional postural limitations related to her knee discomfort and brace. (TR 465). He also found that Plaintiff was limited in her ability to reach in all directions with her right upper extremity, and cited that Plaintiff had good hand function but painful range of motion requiring limited over the shoulder use of the right upper extremity. (TR 486). He further opined that Plaintiff had no visual, communicative, or environmental limitations. (TR486-87). Dr. Morovitz noted Plaintiff's restricted activities at home and concluded that Plaintiff's statements were only partially credible because the medical evidence did not support her level of limited activities of daily living. (TR 488).

On August 31, 2009 Dr. Beale completed a one-page medical assessment in which he circled responses indicating that Plaintiff could stand and sit for thirty minutes at a time and two hours in a workday; lift five pounds occasionally and no amount of weight on a frequent basis; bend, stoop, balance, and raise her left arm over her shoulder occasionally; never engage in activities that required fine or gross manipulation of the left or right hand; and never raise her right arm over her shoulder. (TR 491). Dr. Beale opined that Plaintiff suffered from severe pain and experienced non-exertional limitations which included side effects from medications, fatigue, and the need to take

rest breaks that would interfere with her ability to work. (TR 491). Dr. Beale did not provide narrative responses to explain or support his conclusions.

A single mental health assessment dated July 28, 2009 states that Plaintiff was suffering from depression, guilt, low self-esteem, fears, mood swings, nervousness, anxiety, paranoia, and feelings of worthlessness. (TR 525). The assessment attributed Plaintiff's negative emotions to her car accident. The counselor concluded that Plaintiff functioned within range with regard to her developmental, educational, legal, spiritual, and psychological/emotional history. (TR 519-31). The counselor further observed that Plaintiff was oriented times three and her thought and memory were within normal range, as was her mood and affect. The counselor rated Plaintiff's self concept as poor but noted that Plaintiff's appearance was neat, she was friendly, had good eye contact, her motor activity was normal, she had logical thought associations, normal perceptions, good concentration, judgment, and insight, and an intact memory. (TR 528-29). The counselor assessed Plaintiff with major depressive disorder recent, adjustment disorder with depressed mood, and assigned a GAF of 53. (TR 531).

## IV. VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past work as a sales clerk at a watch company could be classified as unskilled labor performed at a light exertional level, comparable to that of a packager/labeler, with a specific vocational preparation (SVP) code of 2.[1] (TR 53). The

[1] "SVP is 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation'....The requisite time is ranked on a scale from one to nine, with nine representing the most time needed to learn a job." *Creech v. UNUM Life Ins. Co. of N. Am.*, 162 Fed. Appx. 445, 459 (6th Cir. 2006) (quoting the Dictionary of Occupational Titles (DOT) app C ¶ II (4th Ed. 1991)). In the DOT, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. SSR 00-4p,

ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience who was limited to simple, repetitive tasks, with moderate limitations in her ability to maintain concentration for extended periods of time due to pain, and moderate limitations in her ability to understand and carry out detailed instructions due to anxiety. (TR 53). The ALJ instructed the VE that the work performed by the individual could not be performed at hazardous heights or around dangerous machinery, could not involve overhead reaching or fine fingering with the right arm, and must involve only limited extension of the right arm. (TR 53). The VE testified that such an individual could perform unskilled work at the light exertional level, including work as a visual inspector, hand packager, and information clerk or lobby attendant, comprising 6,000 jobs in the Southeastern Michigan Regional labor market. (TR 53-54).

Next, the ALJ asked the VE to consider an individual who in addition to the above limitations was limited to lifting no more than ten pounds occasionally and less than ten pounds frequently with an option to sit-stand at will. (TR 54-55). The VE testified that such an individual could perform sedentary work as an inspector, packager, or security monitor, comprising 6,250 jobs in the Southeastern Michigan Regional labor market. (TR 56).

In a third hypothetical, the ALJ asked the VE to consider an individual who in addition to the above limitations would be limited to jobs that did not require the use of the individual's right dominant hand and permits use of a cane for ambulating. (TR 56). The VE testified that such an individual could perform light exertional work as a visual inspector, sedentary or light exertional work as an information clerk, or sedentary work as a visual inspector or surveillance monitor, comprising 6,500 jobs in the Southeastern Michigan Regional labor market. (TR 57).

---

2000 WL 1898704, at *3.

## V. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since March 25, 2006, and suffered from the severe impairments of residuals, status post right shoulder injury, torn rotator cuff, a back disorder, migraine headaches, and a depressive disorder, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 15-17). The ALJ determined that Plaintiff was unable to perform her past relevant work but retained the RFC to perform light work, except that she requires simple, repetitive tasks due to moderate limitations in the ability to maintain concentration for extended periods and in her ability to understand and carry out detailed instructions secondary to pain and anxiety. The ALJ further found that Plaintiff is able to perform work that does not involve operating at hazardous heights or around dangerous machinery. She found that Plaintiff is capable of performing limited reaching and extension of her right dominant hand, but cannot perform any overhead reaching or fine fingering with the dominant right upper extremity. (TR 17-20). The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from March 25, 2006, the alleged onset of disability, through November 18, 2010, the date of the ALJ's decision because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir.

1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B. Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make

a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C. Analysis**

Plaintiff argues that the ALJ failed to give controlling weight to "all the treating medical opinions of trained treating source physicians," and she "cherry-picked" from the medical records those facts she agreed with instead of reviewing the evidence as a whole. It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In the present case the ALJ considered the record in its entirety, discussed Plaintiff's assessment of her own deficits, and discussed at length the objective medical evidence. The ALJ observed that Plaintiff's most significant injury was to her right shoulder. She discussed Plaintiff's diagnosis of a torn rotator cuff and impingement syndrome, and the arthoscopic surgery performed by Dr. Beale after conservative treatment failed. The ALJ discussed Plaintiff's physical therapy records and the treatment she received from her pain management specialist, Dr. Teklehaimanot. The ALJ noted that Plaintiff was prescribed a TENS unit in June 2009. She also noted that an MRI of Plaintiff's cervical spine was negative and x-rays of the right foot showed a small inferior calcaneal spur.

After considering all of the evidence, the ALJ concluded that Dr. Beale's August 31, 2009 assessment should be given little weight because it was inconsistent with objective testing and was not supported by the clinical findings of record. As previously discussed, in his August 2009 assessment Dr. Beale concluded without explanation that Plaintiff could stand and sit for only two hours in a workday but no more than thirty minutes at a time, lift only five pounds and no amount of weight frequently, never perform fine or gross manipulations with either hand, only occasionally bend, stoop, and balance, and only occasionally lift her left arm above her shoulder. Dr. Beale also determined that Plaintiff was in severe pain. The ALJ concluded that Dr. Beale's assessment that Plaintiff was in severe pain contradicted treatment records showing that Plaintiff described her pain as a four out of ten. The ALJ also noted that Dr. Beale's assessment was inconsistent with Plaintiff's reports that her symptoms had improved. The ALJ noted that Plaintiff had full passive range of motion of the shoulder, full range of motion of the elbow and fingers, full grip strength, no numbness to light and deep palpation over the deltoid, biceps, triceps, forearm, and hand region, normal examination of the neck and knees, and she was observed walking without an assistive device. Thus, the ALJ concluded that Dr. Beale's assessment was inconsistent with the medical evidence.

The fact that the ALJ attributed little weight to the August 2009 assessment of Dr. Beale was not erroneous in this case. The ALJ accurately summarized the medical evidence and gave good reasons for discounting the medical opinion of Dr. Beale. She did not cherry-pick facts to support her RFC finding, but instead cited facts from the record that showed that Plaintiff had severe impairments that caused Plaintiff to be limited to a range of light work. Although Plaintiff argues that the ALJ overlooked evidence and rejected three treating physician opinions, she does not offer

specific examples from the record to show what tests or exam findings she believes the ALJ overlooked or improperly weighed. The ALJ's decision to attribute little weight to Dr. Beale's August 2009 medical assessment is supported by substantial evidence and should not be disturbed.

Next, Plaintiff argues that the ALJ should have considered contacting the treating physician for clarification. She also argues that the ALJ failed to consider Plaintiff's obesity, use of a cane, use of a TENS machine, need to elevate her feet, and failed to evaluate whether Plaintiff is capable of a competitive work schedule. The undersigned is not persuaded by Plaintiff's arguments. Indeed, contrary to Plaintiff's assertions, a simple review of the record shows that the ALJ addressed Plaintiff's use of a TENS unit and cane. (TR 17). Moreover, the record does not demonstrate that Plaintiff was required to elevate her feet or that she could not perform work on a sustained basis.

With regard to the issue of obesity, the ALJ was not obligated to discuss Plaintiff's obesity because neither Plaintiff nor the medical evidence suggested that her obesity was a significant impairment. *See Finch v. Comm'r*, No. 07-13796, 2008 WL 4449857, at *9 (E.D. Mich. Sept. 30, 2008) (citing *Cranfield v. Comm'r*, 79 Fed. Appx. 852, 857 (6th Cir. 2003)). Furthermore, the undersigned is not persuaded that this case is one in which the ALJ should have re-contacted the treating physician for clarification. *See Poe v. Comm'r*, 342 Fed. Appx. 149, 156 n.3 (6th Cir. 2009) (the ALJ is not under a duty to re-contact a treating physician for clarification where there is ample evidence in the record and the ALJ simply rejects the limitations set by the treating physician).

Next, Plaintiff argues that the RFC did not accurately portray Plaintiff's physical impairments and non-exertional limitations. The undersigned could not disagree more. Plaintiff contends that the ALJ failed to factor into her RFC Plaintiff's severe impairment of back disorder, failed to evaluate her concentration problems related to severe fatigue and pain, and failed to

evaluate whether she needed to elevate her feet or lay down from fatigue. Although Plaintiff presents a laundry list of ALJ errors, she does not cite to record evidence or medical assessments to support her claims. A review of the record shows that the ALJ considered Plaintiff's back disorder and noted that an MRI of the cervical spine in February 2010 was unremarkable. Furthermore, as indicated previously, Plaintiff has not pointed to evidence to support her claim that she needed to elevate her feet. As for her concentration deficits, the ALJ incorporated those into the RFC.

Here, the ALJ accurately and thoroughly discussed the medical evidence and supported her RFC determination with substantial evidence on the record. The ALJ found that Plaintiff was capable of performing light work limited to simple, repetitive tasks to accommodate moderate limitations in her ability to maintain concentration for extended periods and in her ability to understand and carry out detailed instructions secondary to pain and anxiety. The ALJ determined that Plaintiff must avoid hazardous heights, dangerous machinery, and she could not perform overhead reaching or fine fingering with her right arm, although she remained capable of performing limited reaching and extension of her right hand. (TR 17-20). It is the undersigned's opinion that the ALJ crafted an appropriate RFC to accommodate Plaintiff's limitations. The RFC is supported by substantial evidence and should not be disturbed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 17, 2012

s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 17, 2012

s/ Lisa C. Bartlett
Case Manager